O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY AHN BY AND THROUGH HIS GUARDIAN JAMIE HONG,<br><br>                         Plaintiff,<br><br>        v.<br><br>BANK OF AMERICA, N.A.; CITIBANK, N.A.; CAPITAL ONE BANK (USA) N.A.; DISCOVER BANK; JHPDE FINANCE I, LLC; AND, EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>                         Defendants. | Case No.:  8:21-cv-01092-MEMF-ADS<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, GRANTING REQUEST FOR JUDICIAL NOTICE, GRANTING FIRST MOTION TO STIKE, AND DENYING SECOND MOTION TO STRIKE, AND OVERRULING EVIDENTIARY OBJECTIONS [ECF NOS. 87, 91, 95, 96, 97]** |

Before the Court are a Motion for Summary Judgment, two Motions to Strike, and a set of Evidentiary Objections, filed by Defendant Experian Information Services, Inc; and a Request for Judicial Notice filed by Plaintiff Anthony Ahn. For the reasons described herein, the Court DENIES the Motion for Summary Judgment, GRANTS the First Motion to Strike, DENIES the Second Motion to Strike, OVERRULES the Evidentiary Objections, and GRANTS the Request for Judicial Notice.

        / / /

        / / /

1

## BACKGROUND

### I.    Factual Background

Plaintiff Anthony Ahn ("Ahn") was a victim of identity theft while a minor. Ahn's mother—
Jamie Hong ("Hong")—discovered the identify theft and worked to correct issues with Ahn's credit
history. Hong reported the identity theft to defendant Experian Information Solutions, Inc.
("Experian"). Experian eventually informed Ahn and Hong that the "final result" of its
reinvestigation was that certain disputed debts were verified. Ahn alleges that this caused him
emotional distress and seeks damages.

### II.    Procedural History

Ahn filed suit on June 23, 2021. *See* ECF No 1. ("Complaint" or "Compl."). The Complaint
was filed by and through Ahn's guardian Hong. *See id.* The Complaint was filed against Experian
and four other defendants. *See id.* Ahn later stipulated to dismiss all defendants except Experian. *See*
ECF No. 98 (Bank of America, N.A. dismissed); ECF No. 99 (Citibank, N.A. dismissed); ECF Nos.
102, 113 (Discover Bank dismissed); ECF Nos. 115–16 (Capital One Bank (USA), N.A. dismissed);
ECF No. 117–18 (JHPDE Finance I, LLC dismissed). Ahn only brought one cause of action against
Experian: the first cause of action, for violation of the Fair Credit Reporting Act. *See* Compl. ¶¶ 96–
99. As Experian is the only remaining defendant, this is the only remaining cause of action.

Experian filed a Motion for Summary Judgment on October 13, 2022, along with a
Memorandum of Points and Authorities, a Statement of Uncontroverted Facts, and other exhibits in
support of the Motion. *See* ECF No. 87 ("Motion for Summary Judgment"); ECF No. 87-1
("Memorandum of Points and Authorities in Support of Motion for Summary Judgment" or
"MPA"); ECF No. 87-2 ("Statement of Uncontroverted Facts in Support of Motion for Summary
Judgment" or "SUF"). Ahn filed an Opposition to the Motion for Summary Judgment on October
27, 2023. *See* ECF No. 90 ("Opposition" or "Opp'n").  Alongside his Opposition, Ahn filed
supporting exhibits, including a Declaration by Anthony Ahn, a Declaration by Jamie Hong, a
declaration by Ahn's designated expert witness Douglas Hollon ("Hollon"), an expert report by
Hollon, and a Statement of Genuine Dispute. *See* ECF No. 90-1 ("Ahn Declaration" or "Ahn
Decl."); ECF No. 90-4 ("Hong Declaration" or "Hong Decl."); ECF No. 90-11 ("Hollon

Declaration" or "Hollon Decl."); ECF No. 90-12 ("Hollon Report"); ECF No. 90-21 ("Statement of Genuine Dispute" or "SGD"). Ahn also filed a Request for Judicial Notice in support of his Opposition on October 27, 2023. *See* ECF No. 91 ("Request for Judicial Notice" or "RJN"). Experian filed a Reply in support of the Motion for Summary Judgement on November 3, 2023. *See* ECF No. 94 ("Reply").  Alongside the Reply, Experian filed a Response to Plaintiff's Statement of Genuine Dispute. *See* ECF No. 94-1 ("Response to Statement of Genuine Dispute" or "SGD Response"). Also on November 3, 2023, Experience filed Evidentiary Objections to Evidence Submitted by Plaintiff in Opposition to Experian's Motion for Summary Judgment. *See* ECF No. 95 ("Evidentiary Objections").  Experian did not file any opposition to Ahn's Request for Judicial Notice. *See* ECF Nos. 92–118). Ahn did not file any response to Experian's Evidentiary Objections. *See* ECF Nos. 95–118.

Experian also filed two motions to strike on November 3, 2022. First, Experian filed a Motion to Strike the Expert Report and Declaration of Douglas Hollon, alongside a declaration with exhibits attached to it. *See* ECF No. 96 ("First Motion to Strike" or "MTS1"); ECF No. 96-1 ("Declaration in Support of First Motion to Strike" or "MTS1 Decl."). Ahn did not file any opposition to the First Motion to Strike. *See* ECF Nos. 97–118. Second, Experian filed a Motion to Strike the Declaration of Anthony Ahn and Declaration of Jamie Hong, alongside a declaration with exhibits. *See* ECF No. 97 ("Second Motion to Strike") or ("MTS2"); ECF NO. 97-1 ("Declaration in Support of Second Motion to Strike" or "MTS2 Decl."). Ahn filed an Opposition to the Second Motion to Strike on November 17, 2022. *See* ECF No. 100 ("Opposition to Second Motion to Strike" or "MTS2 Opp'n"). Experian filed a Reply in Support of the Second Motion to Strike on November 28, 2022. *See* ECF No. 103 ("Reply in Support of Second Motion to Strike" or "MTS2 Reply").

The Court held a hearing on all motions discussed in this Order on June 22, 2023.

## REQUEST FOR JUDICIAL NOTICE (ECF NO. 91)

Ahn requests that the Court take judicial notice of "the Pennsylvania Criminal Docket for Richard Ahn," which was filed by Ahn as Exhibit 11 to Ahn's Opposition to the Motion for Summary Judgment, along with a declaration as to its authenticity. *See* RJN; *see also* ECF No. 90-15

(document Ahn seeks judicial notice of, "Exhibit 11"), ECF No. 90-13 (declaration describing document). Experian does not oppose the request and does not appear to question the document's authenticity

## I.   **Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice of court records is generally permitted. *See United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (citing *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980)).

## II.   **Discussion**

The Court will take judicial notice of Exhibit 11. This is a court record, and its authenticity can be "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). Experian does not oppose the request or dispute the authenticity of Exhibit 11.

The Request for Judicial Notice is GRANTED.

### **FIRST MOTION TO STRIKE (ECF NO. 96)**

Experian requests that the Court strike "the expert report and declaration of Douglas Hollon," filed in support of Ahn's Opposition to the Motion for Summary Judgment, and "all references thereto." *See* MTS1 at 2. For the reasons stated below, the Court grants the First Motion to Strike.

## I.   **Applicable Law**

Experian brings the First Motion to Strike on the basis that Ahn's disclosure of expert Douglas Hollon violated the Court's scheduling orders and was not timely under Federal Rule of Civil Procedure 26(a)(2) ("Rule 26(a)(2)").

When a party intends to rely on an expert witness's testimony, Rule 26(a)(2) requires the party to disclose the expert witness and disclose an expert report prepared by the witness. Fed. R. Civ. P. 26(a)(2)(A)–(B). These disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

If a party fails to "provide information or identify a witness as required by Rule 26(a)," "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) ("Rule 37(c)(1)").

**II.** **Discussion**

Ahn's disclosure of Douglas Hollon was plainly in violation of the Court's orders, and so was in violation of Rule 26(a)(2).

The Court ordered that discovery[1] conclude on September 8, 2022. *See* ECF No. 44 ("Scheduling Order."). The Court amended the Scheduling Order twice after September 8, 2022, and each time made clear that the deadline for expert disclosure had passed, and expert discovery was "[c]ompleted." *See* ECF No. 84; ECF No. 86. Ahn raised no objections and did not request more time for expert disclosure or expert discovery.

Ahn disclosed Hollon's Expert Report[2] to Experian on October 19, 2022, more than a month after the close of discovery, and after Experian had already moved for summary judgment. *See* ECF No. 96-1 ("MTS1 Decl.") ¶ 12. This was plainly untimely. This late disclosure violated the Court's Scheduling Order, and therefore was in violation of Rule 26(a)(2)'s provisions regarding disclosure of expert witnesses. Fed. R. Civ. P. 26(a)(2)(D).

Ahn provided no justification for the untimely disclosure. Pursuant to Rule 37(c)(1), Ahn cannot rely on Hollon's testimony, including the declaration and report, in opposing the motion for summary judgment or any other context. *See* Fed. R. Civ. P. 37(c)(1).

---

[1] While some scheduling orders separate "expert discovery" from "fact discovery," the Court's order here addressed only "discovery" as a whole. *See* Scheduling Order. In context, it should have been clear to Ahn that expert discovery needed to occur during "discovery." *See id.* Ahn has not attempted to argue that he understood the scheduling order to suggest otherwise.

[2] It appears that Ahn previously disclosed that Hollon would be an expert witness, but waited until October 19, 2022 to disclose Hollon's Report. *See* Exhibit B to MTS1 Decl. (May 6, 2022 disclosures stated that "Doug Hollon will testify regarding the identity theft and credit reporting topics at issue herein."). The timely disclosure of Hollon's name (without a timely disclosure of a report) makes no difference. Ahn was required to disclose Hollon's report during the discovery period, in part because Experian had the right to depose Hollon, and that deposition could not occur prior to the disclosure of Hollon's report. *See* Fed. R. Civ. P. 26(b)(4)(A) ("A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.").

Ahn's failure to file any opposition to the First Motion to Strike provides an additional and independent basis to grant the motion. *See* L.R. 7-9 ("opposing party shall" file and serve either opposition briefing or a statement of non-opposition); L.R. 7-12 ("The failure to file any required document . . . may be deemed consent to the granting or denial of the motion").

The First Motion to Strike is GRANTED. The Hollon Declaration (ECF No. 90-11), the Hollon Report (ECF No. 90-12), and all references thereto are STRICKEN and will not be considered in deciding the Motion for Summary Judgment.

## SECOND MOTION TO STRIKE (ECF NO. 97)

Experian requests that the Court strike the Ahn Declaration and Hong Declaration submitted in opposition to the Motion for Summary Judgment. Experian brings this motion on the purported grounds that these declarations contradict Ahn's and Hong's deposition testimony.

### I.     Applicable Law

The Ninth Circuit recognizes a "sham affidavit" rule on motions for summary judgment, where "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

However, the Ninth Circuit has cautioned courts to be careful in applying the sham affidavit rule. "[I]t must be recognized that the sham affidavit rule is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence." *Id.* There are two "important limitations" on the rule. *Id.* First, the rule does not apply in every case were "a contradictory affidavit is introduced to explain portions of earlier deposition testimony." Before applying the rule, "the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id.* Second, "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous." *Id.* The rule should not be invoked to prohibit a party from "from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an

opposition affidavit." *Id.* at 999 (quoting *Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995).

## II.   Discussion

Experian raises separate arguments as to Ahn's Declaration and Hong's Declaration, and the Court will address each in turn

### A.  Ahn's Declaration is not a sham.

Experian points to several purported issues with Ahn's declaration. But upon close examination, the Court finds that Ahn's declaration is not a sham. Ahn's declaration will not be stricken.

i.   Ahn's Involvement in Drafting of Dispute Documents

According to Ahn's Declaration, Ahn "learned about the fraud from Hong in 2021 when she required [Ahn's] assistance with the dispute process." Ahn Decl. ¶ 23. Hong "conveyed to [Ahn] that she had engaged in written and telephonic disputes already and that some of these disputes were successful, but most were not." *Id.* ¶ 24. Ahn "assisted Hong in drafting disputes for Experian and Trans Union" in May 2021, including by "provid[ing] [his] student identification," "review[ing] then sign[ing] the FTC Fraud Affidavit on May 4, 2021," and "review[ing] the final draft of the disputes before they were mailed." *Id.* ¶¶ 25–29. The declaration concedes that "Hong drafted the narrative of the dispute on [Ahn's] behalf," which Ahn explains was because he "was more comfortable with [his] mother being the primary drafter of this dispute for [him] because [he] wanted it to be as clear as possible." *Id.* ¶¶ 28, 30. Ahn "understood these disputes to be part of the process of removing [himself] from Richard's fraud." *Id.* ¶ 31.

Experian points to some deposition testimony that purportedly contradicts the above. *See* MTS2 at 3–4. Ahn testified in deposition that he had never seen the complaint filed on his behalf in this action and did not review "anything like [it]" before the case was filed. *See* Ex. A to MTS 2 Decl. ("Ahn Tr.") at 28:08–29:04. He further testified that he "learn[ed] that the defendants, including Citibank, were reporting information about [him] to the credit reporting agencies" after the lawsuit was filed. *Id.* at 40:13–41:03. Ahn was shown the dispute letter submitted to Experian— which his Declaration says he reviewed—and testified that he did not recognize. *Id.* at 82:14–15.

When asked "[s]o your testimony is, you've never seen a document that looks like this before?" Ahn responded "[n]o." *Id.* at 82:16–18. He went on to testify that he did not assist in preparing the document. *Id.* at 83:06–07. When shown the FTC Fraud Affidavit—which his declaration says he reviewed and signed—he did not recognize it either. *Id.* at 86:20–21. And after a series of questions that led to this conclusion, Ahn agreed with counsel for Defendants that the FTC Fraud Affidavit fraud affidavit was "not complete." *Id.* at 94:09–18.

Ahn's declaration sought to clarify some of this, including by explaining that he reviewed a different version of the letter submitted to Experian, and thus did not recognize the version he was shown. *See* Ahn Decl. ¶¶ 33–36.

The Court finds that the declaration and deposition testimony do not clearly contradict each other on these issues. *See Van Asdale*, 577 F.3d at 998. The facts that Ahn did not review the complaint prior to its filing, and that Ahn was not aware that Citibank and defendants were reporting information about him, do not contradict Ahn's representations that he learned of the fraud from Hong and assisted her prior to the filing of the lawsuit. *See id.* at 28:08–29:04, 40:13–41:03; Ahn Decl. ¶ 23. Ahn may not have understood the details of the fraud or how credit reporting works, but nonetheless understood he had suffered fraud that needed correcting. Similarly, Ahn's representation that he reviewed the May 4 Letter or FTC Affidavit is not contradicted by his testimony that he did not recognize the versions he was shown in deposition. *See Id.* ¶¶ 25–29; Ahn Tr. at 82:16–18, 83:06–07. He did not claim to have written the documents and explained that he reviewed different versions. Ahn Decl. ¶¶ 25–29. This is an attempt to clarify or explain previous testimony, not a clear contradiction of the previous testimony. *See Van Asdale*, 577 F.3d at 999. Experian may argue that this attempt to clarify is not credible, but that question is for the jury.

### ii.   Ahn's Testimony on Emotional Distress

According to Ahn's declaration, Ahn "experienced emotional distress" when he "learned of Experian's rejection of our dispute [on June 2, 2021]." Ahn Decl. ¶ 43. The "emotional distress [Ahn] experienced" "was stressful and frustrating for [him] because [he] know[s] that negative credit reporting can impact [him] in adulthood. *Id.* ¶ 49. Ahn is "aware that derogatory information on a credit report will reduce a person's credit score" and that a reduced credit score may be an issue as

he approaches college and seeks student loans. *Id.* ¶¶ 50–54. The "stress of not being able to afford

to go to college is troubling" to Ahn, and he has "lost sleep over the prospect of not being able to

pursue this next step in my life." *Id.* ¶ 54. He has "conveyed these issues to [his] mother and

discussed feeling depressed with her" after Experian rejected the disputes. *Id.* ¶ 55.

Experian argues that this contradicts deposition testimony. *See* MTS2 at 3–6. Ahn testified

that he had not experienced "any stress due to what has happened in this case" because he "didn't

know what the case was about." Ahn Tr. 65:16–18. He testified that "Experian's conduct in this

case" had not caused him any emotional distress, and that that "Experian's conduct" had not

frustrated him at all or caused him to lose sleep. *Id.* 68:22–69:10. He added that "Experian's credit

reporting" had not caused him any anxiety or "emotional pain," and that he had never told his

mother or anyone else that he felt anxiety or emotional pain because of Experian's credit reporting.

*Id.* 69:11–25.

Ahn's declaration addressed these inconsistencies. He explained that the "deposition was a

grueling and uncomfortable process" for him, and that he "was in a room full of adult strangers"[3]

who asked him questions on "topics that [he] had not previously discussed with anyone aside from

my mother." Ahn Decl. ¶ 46. He "was confused by many of the questions but answered to the best of

[his] ability and based upon [his] understanding. *Id.* ¶ 47. "In reviewing the transcript in a calmer

setting, [Ahn] realized that [he] misunderstood certain questions and misspoke at certain points." *Id.*

¶ 48.

The Court finds that the declaration and deposition do not clearly contradict each other.

Questions about "conduct in this case" could be interpreted to be about conduct in litigation rather

than the underlying issues that led to litigation. *See Id.* 68:22–69:10. Even when the focus changed

to Experian's conduct more broadly, Ahn may have interpreted Experian's questions—which were

---

[3] Experian notes that the deposition was via Zoom and no one was in the physical room with Ahn, and
suggests that Ahn's purported anxiety about sharing his feelings with adult strangers is therefore not credible.
*See* MTS2 at 5. The Court does not find this argument persuasive. It is plausible that a teenager would feel
just as anxious about sharing his feelings with adults via Zoom as he would if done in person. Further, Zoom
meetings are sometimes called "Zoom rooms." *See Rooms: Bring Meeting Spaces Online*, Zoom,
https://explore.zoom.us/en/products/zoom-rooms/ (last accessed June 15, 2023) ("Zoom Rooms bring HD
video collaboration into any space"). It is not disputed that adults were with Ahn in the Zoom room. The
statement that adults were in the "room" is not contradicted by the fact that the deposition was via Zoom.

specifically directed at frustration and "emotional pain"—narrowly to exclude the emotional distress he claims to have experienced.  *See* Ahn Tr. 68:22–69:25; Ahn Decl. ¶ 49. Ahn's declaration testimony that he experienced emotional distress from fear of the impact his credit history might have on his future is not a "clear and unambiguous" contradiction of his deposition testimony that this case has not caused stress and Experian's conduct has not caused frustration or pain. *See Van Asdale*, 577 F.3d at 998. Similarly, Ahn's declaration testimony that he "lost sleep" about the stress of credit issues affecting his access to student loans does not clearly contradict his deposition testimony that Experian's conduct had not caused him to lose sleep. Ahn Decl. ¶ 54; Ahn Tr. 69:08– 10. But Ahn may have interpreted the question in a way that did not link Experian's conduct to the credit issues that affected his sleep.  Ahn's declaration testimony on these issues, like the testimony on preparation of documents above, is an attempt to clarify previous testimony rather than a clear contradiction of it. *See Van Asdale*, 577 F.3d at 998–99. Again, whether this clarification is credible is a question for the jury.

### iii.  Conclusion as to Ahn

Considering the full context, the Court does not find that Ahn's declaration is a sham that must be stricken.  Ahn's declaration testimony did not squarely contradict his deposition testimony.

It is worth noting that Ahn, although now an adult, was a minor as these events occurred. *See* Ahn Decl. ¶ 1 (Ahn's birthday is in September 2004); He purportedly learned of the fraud and reviewed the documents when he was 16 years old and was deposed at 17 years old. *See id.* Some confusion as to the details of how credit reporting works is understandable. So too is some confusion as to which documents he reviewed, and as to what exactly was being asked in various lines of questioning. This possible confusion bolsters the Court's finding that Ahn's declaration does not "clear[ly] and unambiguous[ly]" contradict the testimony he gave in deposition. *See Van Asdale*, 577 F.3d at 998. To the extent there are small inconsistencies, Ahn's declaration and the context provide plausible explanations.

A reasonable jury could conclude that the distress caused by the lingering effects of the crime of identity theft committed by a parent—who also committed domestic violence, did not seek custody, and did not pay child support—had become entangled in the mind of a teenage boy,

particularly after witnessing the various struggles his mother faced during and after her marriage. To the extent that Experian wishes to argue that his deposition testimony shows that Ahn is not credible, Experian may show the testimony to the jury, and allow the jury to decide. But the purported contradictions here are not so stark as to warrant striking the declaration and finding that there is no dispute of fact on these issues. *See Van Asdale*, 577 F.3d at 998–99.

The Motion to Strike is DENIED as to Ahn's Declaration.

### B. Hong's Declaration is not a sham.

Hong's declaration claims that she "discussed the fraud with [Ahn]" in "April or May 2021" while preparing disputes, "since [Ahn] was now approaching adulthood and [Hong] wanted to provide new information with his disputes." Hong Decl. ¶ 26–27. Hong asked Ahn to provide his student ID card to assist with the May 4 Letter and "complete the Federal Trade Commission's Identity Theft Victim's Complaint and Affidavit with [Hong]." *Id.* ¶¶ 28–29. Later on, when Hong and Ahn learned that Experian had rejected the dispute [on June 2, 2021], both Hong's and Ahn's "stomach[s] drop[ped]." *Id.* ¶ 40. Per Hong, Ahn had not previously been "aware of Experian's prior conduct or credit reporting" until the response letter from Experian on June 2, 2021, but she then observed "emotional distress" in connection with Experian's decision not to correct the fraud. *Id.* ¶ 42.

Experian argues that the declaration testimony above contradicts previous deposition testimony. MTS2 at 6–7. Hong testified in depositions that she prepared the May 4 Letter to Experian with only a paralegal's assistance, without mentioning Ahn. *See* Ex. B to MTS2 Decl. ("Hong Tr.") 52:12–53:03. She explained that she informed Ahn of the letter, but only said "said something to the effect that we'll have to correct -- we'll have to get the credit report corrected." *Id.* 54:23–55:04. Experian argues that this contradicts her declaration testimony that Ahn first learned of Experian's conduct when Experian later sent a response to that letter, and that she asked Ahn for his student ID to prepare the letter. *See* MTS2 at 7. Hong also testified in deposition that Ahn was "sad looking" about the fact that Hong was under stress about the situation. *See* Hong Tr. 103:25–104:17. Experian argues that this contradicts her declaration testimony that their stomachs dropped. *See* MTS2 at 7. But Experian neglects to mention the other testimony on Ahn's purported emotional

distress that Hong gave in deposition, including that Ahn felt emotional distress because he was "being ignored" in his attempts to correct the issues, and that he frequently asked how his credit report might impact his plans to attend college. *See* Hong Tr. 102:23–103:14.

If these are contradictions at all, they are not significant. One possible explanation of the purported discrepancies is that Ahn was told on a high level about the credit issues around May 4, 2021, and provided his student ID to assist in writing the letter, but did not assist in the actual drafting. *See* Hong Decl. ¶¶ 26–29.; Hong Tr. 52:12–53:03. Further, Ahn may not have learned of Experian's conduct specifically at that time, and Hong only testified in deposition that she told Ahn non-specific fraud needed correcting. Hong Decl. ¶ 42; Hong Tr. 54:23–55:04. The testimony that Ahn looked sad about Hong's stress similarly does not contradict the declaration testimony that Ahn's stomach dropped upon receiving the response letter from Experian, particularly in light of other testimony. *See* Hong Decl. ¶ 40; Hong Tr. 102:23–104:17. It is also notable that Hong testified through an interpreter at her deposition. *See* Hong Tr. 7:02–04. This provides further explanation for small misunderstandings or discrepancies. Parsing the words so finely seems inappropriate under these circumstances.

The Court finds that Hong's declaration is not a sham. Rather than identifying clear discrepancies, Experian is "quibbl[ing] about peripheral details in the deposition and the affidavit," which is not grounds for declaring a declaration a sham. *See Messick v. Horizon Indus. Inc.*, 62 F.3d 1227.

The Motion is DENIED as to Hong's declaration.

## EVIDENTIARY OBJECTIONS (ECF No. 95)

Experian submitted a 40-page table which lists 61 "evidentiary objections" to various pieces of evidence that Ahn referenced in his Statement of Genuine Dispute. *See* Evidentiary Objections.

### I.   Applicable Law

A party moving for or opposing summary judgment "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the key issue is not "admissibility of the evidence's form" and is rather "the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). So long as it

is possible for the evidence to be admitted in some form, the admissibility of the specific form of evidence used in the summary judgment papers is not dispositive as to whether the contents of the evidence may be considered. *See* Fed. R. Civ. P. 56(c)(2).

## II.   **Discussion**

Experian's Evidentiary Objections can be grouped in to three categories. First, Experian objects to the report and declaration of purported expert Hollon, who Experian argues was not properly disclosed. *See* Evidentiary Objections No. 3. Second, Experian objects to various aspects of the Ahn and Hong declarations, which Experian argues are subject to exclusion under the sham declaration rule. *See* Evidentiary Objections Nos. 1, 2, 4–12, 39, 42, 43, 50–55. Third, Experian objects to various pieces of evidence based on the Federal Rules of Evidence, including on the basis of relevance under Federal Rule of Evidence 401, hearsay under Federal Rule of Evidence 801, and other similar bases. *See* Evidentiary Objections Nos. 13–38, 40, 41, 44–49, 56–61.

### A.   The first and second categories are moot in light of the Motions to Strike.

The Court has already ruled on the first and second categories. The Court found that Hollon was improperly disclosed and excluded Hollon's declaration and report. This moots Evidentiary Objection No. 3. And the Court determined that the Ahn and Hong declarations are not shams and thus declined to exclude these declarations. Evidentiary Objections Nos. 1, 2, 4–12, 39, 42, 43, and 50–55 raise identical arguments to the arguments in the Second Motion to Strike and are moot in light of the Court's ruling on these issues.

In light of the mootness of these objections, Evidentiary Objections Nos. 1–12, 39, 42, 43, and 50–55 are overruled.

### B.   Experian's Third Category of Objections are Overruled.

As to most of the objections in the third category, Experian has not made the requisite showing that Ahn *cannot* present this evidence in an admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2). For example, many of these objections are based upon inadequate authentication. *See, e.g.*, Evidentiary Objections Nos. 19, 20, 21 ("Plaintiff offers no testimony authenticating the [evidence]."). But Experian has not shown or attempted to show that the documents could not be authenticated and made admissible at trial. So too with hearsay objections; Experian has not shown

13

that testimony or information could not be presented in a non-hearsay form. On this basis, the objections on Evidentiary Objections Nos. 19–24, 44, 49, and 56–59 are overruled.

This leaves only the objections based on relevance: Evidentiary Objections Nos. 13–18, 25–38, 40, 41, 45–48, 60, and 61.

Under Federal Rule of Evidence 401 ("Rule 401"), evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401(a)–(b). This standard is a "liberal one" and contains a "very expansive definition of relevant evidence. *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) (quoting various authorities).

Here, Experian's relevance objections can be divided into two subcategories. First, Experian objects to certain evidence related to Ahn's and Hong's family life, including details of each of their relationships with Richard Ahn. *See* Evidentiary Objections Nos. 13–18. Second, Experian objects to certain evidence related to the conduct of third parties (Chase, Equifax, Trans Union, and American Express), related to Ahn and Hong's dealings with those third parties, and related to Experian's conduct that is not alleged to form the basis of liability in this action. *See* Evidentiary Objections Nos. 25–38, 40, 41, 45–48, 60, 61.

The details of Ahn's and Hong's family life and relationship with Richard Ahn are relevant. The events leading to this litigation began with Richard Ahn stealing Ahn's identify. *See* Response to Statement of Genuine Dispute ¶¶ 67–76. The fact that Ahn's own father did this left Ahn "quite shocked and taken aback." *Id.* ¶ 55. These emotions Ahn felt may be relevant to understanding Ahn's and Hong's conduct throughout the events that followed, including as to why Hong took the lead on preparing the disputes and whether Ahn felt emotional distress when the disputes were not resolved. Background details on Hong and Ahn's family life are not at the core of the case, but they may nonetheless be relevant to understanding Ahn's emotions, and therefore understanding Ahn's and Hong's conduct. This is sufficient for relevance. *See* Rule 401.

The second category is also relevant. One issue in this case is whether Experian acted reasonably. In considering this, it may be relevant to consider how other similarly situated parties acted in similar circumstances, and how Experian itself acted in similar circumstances in the past.

14

*See* Motion at 8–11. Further, there are also open questions on how and by whom the disputes to Experian were submitted, which Experian argued at the hearing were relevant as to damages, as it is less likely that Ahn would feel emotional distress after Experian's letter regarding the dispute if he was not previously aware of the dispute's existence. The ways in which Hong and/or Ahn dealt with other third parties in resolving disputes may be relevant in resolving these questions. *See* Rule 401.

The Objections are overruled as to Evidentiary Objections Nos. 13–18, 25–38, 40, 41, 45–48, 60, and 61.

### C.  Conclusion

In sum, all 61 of the Evidentiary Objections are OVERRULED. This shall be without prejudice, and the Court will consider any objections raised to this same evidence by either party at a later stage in litigation, including at trial.

## MOTION FOR SUMMARY JUDGMENT (ECF NO. 87)

### I.    Applicable Law

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Id.*

15

Where a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *Id.* at 1102–03. In such cases, the nonmoving party may defeat the motion for summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Anderson*, 477 U.S. at 248–49. Under these circumstances, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is no genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

To carry its ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no genuine issue of material fact for trial. *Nissan Fire*, 210 F.3d at 1102; *Celotex Corp.*, 477 U.S. at 323.

## II.     Findings of Fact[4]

The Court finds that the following material facts are established for trial under Federal Rules of Civil Procedure 56(a) and 56(g).

Plaintiff Ahn was a victim of identity theft by his father, Richard Ahn, while Ahn was a minor. ¶¶ 67-68. Ahn's mother, Hong, discovered this in 2018 when she received a call from a detective investigating Richard Ahn. ¶ 54. The fraud spanned all the way back to 2011, and Richard Ahn opened at least 15 accounts in Ahn's name and incurred more than $35,000 in debt. ¶¶ 68–70. Richard Ahn was eventually arrested for his fraud. ¶ 84.

After Hong discovered the fraud, Hong began a years-long process to correct Ahn's credit record. This process included submitting letters to various consumer reporting agencies, commonly called "credit bureaus." *See* ¶¶ 87–89.; *see also* ¶ 2. Credit bureaus do not themselves issue credit, but track credit history and compile credit files for consumers based on information other entities provide. *See* ¶¶ 2–3. The entities who provide this information are "furnishers" and the information furnishers provide is called "trade lines." ¶ 3.

Defendant Experian is a credit bureau. ¶ 2. Hong submitted a dispute to Experian on Ahn's behalf on February 14, 2019. ¶ 89. Hong also submitted disputes to credit bureaus Equifax and Trans Union the same day. ¶¶ 87, 88.

On May 4, 2021, Hong sent a letter to Experian (the "May 4 Letter"), written in Ahn's voice, disputing certain items that remained in Ahn's Experian credit file. ¶¶ 12–14. Attached to this letter was an "FTC Affidavit" (a/k/a "Identity Theft Victims Complaint."). *See* ¶¶ 107–122. The May 4 Letter specifically mentioned that Ahn was sixteen years old. ¶ 13.

Whenever Experian receives a dispute from a consumer, it typically contacts furnishers of credit information via a process called Automated Consumer Dispute Verification (ACDV). *See* ¶¶ 5–6. The consumer sends documents related to the dispute to Experian, and Experian sends those

---

[4] The following factual background is derived from Defendant Experian's Response to Plaintiff Anthony Ahn's Statement of Genuine Disputes. ECF No. 94-1. To the extent that any statements of fact are omitted, the Court concludes they are not material to the disposition of this Motion. To the extent that any of the facts set below were allegedly disputed by the opposing party, the Court concludes that no actual dispute exists or that the adopted language resolves the dispute.

documents on to furnishers, who then review the dispute and report back to Experian. ¶¶ 6–7. Experian reviews the furnishers' responses using its own policies and procedures, completes the reinvestigation, and informs the customer of the result. ¶¶ 9–10.

When a consumer disputes an account that was opened before the consumer turned eighteen, Experian in some cases applies a different policy (the "Minor Policy"). ¶ 11. Under the Minor Policy, if proper documentation is submitted by the consumer, Experian will in some cases delete the disputed accounts that were opened in minors' names regardless of what information the furnishers provide. *See* ¶ 11. Experian did not apply the Minor Policy to Ahn's dispute. ¶ 16.

Experian informed Ahn via letter on May 14, 2021, that "in order to process your request to block information in your personal credit report due to identity theft, we need additional information," and requested specific information. ¶ 19. Neither Hong nor Ahn ever responded to this letter. ¶ 21. On June 2, 2021, Experian sent another letter, which stated that it was the "final results of [Experian's] reinvestigation," and indicated that certain of the fraudulent accounts had been verified by furnishers. ¶¶ 25–27. By August 9, 2021, after Ahn had already filed suit, Experian removed the disputed items mentioned in the May 4 Letter from Ahn's credit file. ¶ 31.

### III.   <u>Discussion</u>

Ahn's only remaining claim is the first cause of action, against Experian, for violation of the Fair Credit Reporting Act (15 U.S. Code §§ 1681–1681X, "FRCA"). *See* Compl. ¶¶ 96–99. FCRA requires that after a consumer notifies a credit bureau of a purported inaccuracy in the consumer's file, the credit bureau conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate." *See* 15 U.S. Code § 1681i(a)(1)(A). Failure to conduct a reasonable reinvestigation is a basis for civil liability. *See Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069–71 (9th Cir. 2008). A defendant may also be liable for punitive damages for "willfully fail[ing] to comply" with obligations under FCRA. *See* 15 U.S. Code § 1681n(a)(2).

Here, Ahn alleges that Experian "failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i." *See* Compl. ¶ 70.  Ahn further alleges that Experian "willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute." *See* Compl. ¶ 75.

In order to prevail on his claim against Experian, Ahn will need to prove that: (1) Ahn's consumer file at Experian contained inaccurate or incomplete information; (2) Ahn notified Experian of the alleged inaccuracy; (3) Experian failed to conduct a reasonable investigation in response; and (4) Ahn suffered damages. 15 U.S. Code § 1681i(a)(1)(A); *see also Butler v. Equifax Info. Servs., LLC*, No. EDCV182084JGBSHKX, 2019 WL 2498939 (C.D. Cal. Apr. 3, 2019).[5] Additionally, Ahn could win punitive damages through a showing that the violation was "willful." *See* 15 U.S. Code § 1681n(a)(2).

Experian raises three arguments in its Motion for Summary Judgment. First, Experian argues that Ahn's claim fails because Experian conducted a reasonable reinvestigation. *See* Motion at 8–11. Second, Experian argues that Ahn cannot show actual damages. *See id.* at 12–17. And third, Experian argues that Ahn cannot show willfulness, and thus cannot win punitive damages. *Id.* at 18–20. Ahn disagrees on all three points. *See* Opp'n.

Because Experian did not argue that Ahn cannot show the first or second elements, and the moving party bears the burdens of production and persuasion on a motion for summary judgment, *see Nissan*, 210 F.3d at 1102, the Court need only address the three issues Experian raised: whether Experian conducted a reasonable investigation, whether Ahn can show damages, and whether Experian acted willfully.

**A. There are disputed material facts as to Experian's investigation, and a jury could conclude that Experian did not conduct a reasonable investigation**

i. Factual Disputes

The parties dispute whether Experian's policies make application of the Minor Policy "mandatory." *See* Response to SGD ¶ 15–16 Ahn cites a policy document that plainly instructs Experian employees to delete accounts opened by minors and does not appear to leave room for

---

[5] Although *Butler* is not binding on this Court, both parties agree that *Butler* properly defines the elements of liability under 15 U.S. Code § 1681i ("Section 1681i"). *See* Motion at 8–9; Opp'n at 11. This Court agrees with the *Butler* Court's analysis of the required elements. *See* 15 U.S. Code § 1681i(a)(1)(A); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (although FCRA does not on its face require a prima facie showing of an inaccuracy, the Ninth Circuit has "imposed such a requirement.").

discretion. *See* ECF No. 90-17[6] ("Ex. 13"), at EXP-AHN 000176.[7] Experian cites deposition testimony that an Experian employee "could have applied" the Minor Policy, which does not specifically address whether the employee was required to apply it. *See* Exhibit B to ECF No. 87-4 ("Ex. B") 66:01-20. Whether Experian's policy makes the application of Minor Policy mandatory upon submission of proper documentation is a genuine dispute of material fact. But there is no dispute that that Experian could have applied this policy and deleted the disputed information as to Ahn, and that it did not do so. *See* Response to SGD ¶ 11. The parties dispute whether the employee who opted not to apply the Minor policy "made a mistake" or "recklessly disregarded Ahn's rights." *See id.*

These disputes about the details of Experian's Minor Policy are relevant. FCRA does not impose liability if "an inaccurate report was generated despite the agency's following reasonable procedures." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). A jury needs to understand what Experian's policies are in order to determine whether the policies are reasonable and whether Experian followed the policies. A determination of the details of the Minor Policy and why it was not applied could lead to liability on either a theory that Experian unreasonably failed to follow its policies, or that Experian's policies are unreasonable.

ii.   A jury could find Experian's investigation unreasonable.

In FCRA cases, the "reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Id.* Here, the jury may examine Experian's ACDV process and how Experian applied it and come to its own conclusions as to whether Experian's reinvestigation was reasonable.

Experian argues at length that because it applied its typical ACDV process, a jury could not possibly find Experian's reinvestigation unreasonable. But this misses the mark in several key respects. Drawing all inferences in favor of Ahn, the non-moving party, a jury could find Experian's

---

[6] This document was filed under seal. An unredacted version can be found at ECF No. 93-2.

[7] Ahn's statement of genuine dispute cites to "Exhibit 11, EXP-AHN 000176." The document containing the page Bates-numbered EXP-AHN 000176 is Exhibit 13. The Court assumes that this, and all other citations to Exhibit 11, were intended to be citations to Exhibit 13.

reinvestigation unreasonable on this evidentiary record here. These questions should be resolved by the jury, not via summary judgment motion.

First, a jury could find that Experian's decision not to apply the Minor Policy to Ahn's claim—whether that decision was a "mistake" by an employee or a reckless disregarding of rights (*see* Response to SGD at 7)—was unreasonable. That decision was part of the reinvestigation, and so if it was unreasonable, the whole reinvestigation may have been unreasonable. The factual dispute on what exactly the Minor Policy is—particularly whether it is mandatory—may help inform the jury's decision on whether failure to apply the minor Policy was unreasonable. Examining the evidence in the light most favorable to Ahn, a jury could find Experian liable on the basis that Experian failed to apply this policy.

In the hearing, Experian raised a policy concern regarding the Court's reasoning on this issue. Experian argued that if credit bureaus can be held liable for failing to apply a policy (like the Minor Policy), the credit bureaus would be incentivized not to have such policies at all, which would hurt consumers. This argument is not persuasive, because, as described in further detail below, a jury could also find Experian's policies or lack thereof unreasonable. A FCRA jury must analyze both "whether the agency followed" policies and "the reasonableness" of those policies. *See Guimond*, 45 F.3d at 1333. In other words, if Experian has a Minor Policy and fails to follow it, a jury might find that failure unreasonable, but if Experian opts not to have a Minor Policy, a jury might find not having a minor policy unreasonable. FCRA incentives Experian to have reasonable policies and to follow those policies.

Accordingly, as a second possible basis for liability, a jury could find that Experian's typical ACDV Process (including its interaction with the Minor Policy) is unreasonable. This too might depend on the factual contours of the Minor Policy. Drawing all inferences in favor of Ahn, a jury could find that Experian's procedures for reinvestigation are unreasonable, including on the possible basis that these procedures do not include a mandatory safety valve for minor fraud, which Experian acknowledges "is one of the most common types of fraud." *See* Response to SGD at 28.

Experian argues that because Experian "forwarded Plaintiff's dispute to the furnishers and reasonably relied on the furnishers' responses," Experian conducted a reasonable investigation as a

matter of law. *See* Motion at 9. Experian cites cases that supports this purported rule, including the

unpublished (and thus non-binding) Ninth Circuit case *Ghazaryan*, which held that an investigation

"was reasonable as a matter of law," where the credit bureau "determined [the furnisher] to be a

reliable source" and "[plaintiff] gave [the credit bureau] no reason to question that determination."

*See Ghazaryan v. Equifax Info. Servs., LLC*, 740 F. App'x 157, 158 (9th Cir. 2018). Experian also

pointed to numerous district court cases that stand for the same or very similar principles: that where

a credit bureau does not have reason to question a furnisher's reliability, and performs an

investigation that relies on a furnisher, the investigation is reasonable. *See* Motion at 10 (citing

*Huffman v. Experian Info. Sols., Inc.*, No. 19-CV-07408-JSW, 2021 WL 1561304, *9 (N.D. Cal.

Apr. 14, 2021); *Quinn v. Experian Sols.*, No. 02 C 5908, 2004 WL 609357, *6 (N.D. Ill. Mar. 24,

2004); *Anderson v. Trans Union LLC*, 367 F. Supp. 2d 1225, 1233 (W.D. Wis. 2005); *Garrett v.

Experian Info. Sols., Inc.*, No. 11-12523, 2012 WL 1931324, *6 (E.D. Mich. May 29, 2012);

*Anthony v. Experian Info. Sols. Inc.*, No. 214CV01230MCEEFB, 2017 WL 1198499, *7 (E.D. Cal.

Mar. 31, 2017); *Edeh v. Equifax Info. Servs.*, LLC, 974 F. Supp. 2d 1220, 1236–37 (D. Minn. 2013),

*aff'd*, 564 F. App'x 878 (8th Cir. 2014)). In further support of this argument, Experian points to

*Gorman*, which held that a furnisher is required to conduct a reasonable investigation, just as a credit

bureau is, and noted that credit bureaus necessarily depend on furnishers' investigations, and

*Carvallo, which* held that a dispute with a credit bureau is not the proper way to argue the merits of a

dispute with a furnisher over a debt. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156

(9th Cir. 2009); *Carvalho*, 629 F.3d at 892. Experian also cites the Seventh Circuit case *Childress*,

which held that where the plaintiff proposes a specific alternative procedure, "it [is] the plaintiff's

burden to establish the reasonableness of her proposed procedure." *See* Motion at 10; *Childress v.

Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015). As Ahn notes, there are cases that show

the inverse of Experian's purported rule: "where a [credit bureau] is affirmatively on notice that

information received from a creditor may be suspect, it is unreasonable as a matter of law for the

agency to simply verify the creditor's information through the ACDV process without additional

investigation." *Darrin v. Bank of Am., N.A.*, No. 2:12-CV-00228-MCE, 2014 WL 1922819 (E.D.

Cal. May 14, 2014) (quoting *Bradshaw v. BAC Home Loans Servicing*, LP, 816 F.Supp.2d 1066, 1073–74 (D. Or. 2011)).

At the hearing, Experian made clear that it is not arguing that following ACDV is *always* reasonable as a matter of law. Rather, Experian's argument is based on two key purported facts: (1) Experian provided the furnishers with all of the documents Ahn provided Experian, and (2) Experian had no reason to question the reliability of the information furnishers provided. According to Experian, where these two facts are present, the investigation is reasonable as a matter of law. This argument does not square with the actual facts of this case, and so the Court need not decide whether Experian's rule is correct. Some evidence suggests that Experian did in fact have reason to question the reliability of information furnishers provided. It is not disputed that Ahn provided documentation showing he was a minor when the accounts were opened. *See* Response to SGD at 7. A jury could find this fact sufficient to conclude Experian had reason to question furnishers when the furnishers "verified" these disputed accounts. Further, as Ahn notes, other credit bureaus came to different conclusions when they reinvestigated using their processes, a fact which Experian does not dispute (except as to relevance). *See* Response to SGD ¶¶ 125, 126. This too might suggest that Experian had reason to question the furnishers. Thus, the facts here are distinguishable from every case Experian cites, as none of these cases considered disputed accounts opened by a minor, and all found that the credit bureau had no reason to doubt furnishers' verification.

Under Ninth Circuit law, a credit bureau's duty to investigate "requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." *Gorman*, 584 F.3d at 1156. This should be a "fairly searching inquiry." *Id.* at 1157. The purpose of FRCA is to "protect consumers against inaccurate and incomplete credit reporting," and requiring only "a cursory investigation" would undermine that goal. *Id.* at 1156–57.

The jury may examine Experian's reinvestigation here—including the ACDV process, the decision to rely on it, whether other steps were necessary, and the questions around the Minor Policy—and come to its own conclusions as to whether Experian's reinvestigation was reasonable. *See Guimond*, 45 F.3d at 1333 (reasonableness under FRCA is typically a jury question). It might find that the Minor Policy was not a bonus extra, and in the case of fraud involving a minor, the

ACDV process was wholly insufficient—meaning that the failure to apply the Minor Policy in this case was not reasonable. Similarly, a jury could find that the processes followed by other CRAs demonstrates that the process followed by Experian was not reasonable—just as Experian may seek to convince the jury that the ACDV process was the reasonable industry standard.

**B. A jury could find that Ahn suffered emotional distress damages.**

For damages, the key question is whether Ahn suffered emotional distress.[8] Ahn concedes he did not suffer pecuniary damages, and he is not seeking any pecuniary damages. *See* SGD ¶ 36.

There are genuine disputes of material fact as to whether Ahn suffered emotional distress damages. Ahn claims that he suffered emotional distress when he learned that Experian rejected the dispute on June 2, 2021. *See* Ahn. Decl. ¶¶ 42, 49–54. He explains that, specifically, he has suffered stress and loss of sleep because he was worried about how a reduced credit score would impact him as he entered adulthood, pursued a college education, and sought student loans. *See id.* Experian argues that this contradicts Ahn's testimony in deposition, and that Ahn's declaration is a "sham" being used to "manufacture disputes in opposition to a motion summary judgment." *See* Response to SGD ¶ 42. For the reasons discussed above regarding the Second Motion to Strike, the Court is not convinced that the declaration is a sham and will consider Ahn's Declaration in ruling on the Motion for Summary Judgement. With Ahn's Declaration included in the evidentiary record, there are clearly disputed facts as to whether Ahn suffered damages.

There are also disputes of fact on peripheral issues related to damages. There is a factual dispute as to whether and to what extent Ahn assisted in preparing the May 4 Letter and attached FTC Affidavit. *See* Response to SGD ¶¶ 12–14. Experian argues that Ahn "*could not* have suffered emotional distress because he was largely unaware of the facts underlying this case," and points to the purported fact that Ahn was not familiar with the dispute letter in support. Motion at 16 (emphasis in original). Whether Ahn was involved in preparing the May 4 Letter is relevant to

---

[8] There may also be questions on causation—whether Experian was the proximate cause of any emotional harm Ahn suffered—or other issues related to damages. Analysis of these issues is not relevant to the Court's disposition of this Motion.

whether and to what extent he was aware of Hong's efforts to correct his credit files and may be relevant to determining whether receipt of Experian's response on June 2 caused emotional distress.

The deposition testimony—even taken alone—does not establish the absence of a genuine issue of material fact. A jury might find—under the appropriate causation standard—that Ahn experienced emotional distress and it was "caused"—in the legal sense—by Experian's conduct and that the questions posed to Ahn regarding "Experian's conduct" and "this case" simply did not elicit responses demonstrating that truth. When added to the declaration establishing that some aspects of this credit situation did undoubtedly cause Ahn some stress, this Court cannot find the absence of a genuine issue of material fact with respect to damages.

Experian also argues that Ahn's evidence regarding emotional distress is conclusory, and lacks sufficient detail on the injuries he suffered. *See* Motion at 14. Experian cites *Moran*, which granted summary judgment to defendants where plaintiff's only evidence of emotional distress was claims that he felt "felt 'devastated' and 'discouraged,'" and distinguished from other cases where plaintiffs provided more detail on items such as "personal and family problems, sleeplessness, high levels of stress." *Moran v. Screening Pros, LLC*, No. 212CV05808SVWAGR, 2020 WL 4724307, 10–12 (C.D. Cal. July 30, 2020), *aff'd*, 25 F.4th 722 (9th Cir. 2022). *Moran* is not binding on this Court.[9] But even if it were, Ahn has in fact provided detail. His declaration specifically states that "stress of not being able to afford to go to college" troubles Ahn, and he has "lost sleep over the prospect of not being able to pursue this next step in my life." Ahn Decl. ¶ 54. The situation here is significantly distinguishable from *Moran*. *See Moran*, 2020 WL 4724307 at 10–12. The Court holds that Ahn has provided sufficient detail at this stage.

Experian can and likely will seek to question the credibility of Ahn and Hong and the veracity of their claims.  But it is the jury that must resolve those disputes at trial, not this Court on summary judgment. Drawing all inferences in favor of Ahn, the Court holds that a reasonable jury could find that Ahn suffered some damages based on the evidence in the factual record.

**C. Willfulness**

---

[9] Although *Moran* was affirmed, the appeal was entirely on other issues, and so the Ninth Circuit did not address this portion of *Moran*'s reasoning. *See Moran v. Screening Pros, LLC*, 25 F.4th 722 (9th Cir. 2022).

Willfulness under FCRA can constitute either knowing violations of the law or actions done with reckless disregard of statutory duties. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–57 (2007). An action is done with reckless disregard of statutory duties if the action "is not only a violation under a reasonable reading of the statute's terms," but also shows that "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *See id.* at 69. The action must involve "an unjustifiably high risk of harm that is either known or so obvious that is should be known." *Id.* at 68.

In the hearing, Experian pointed to *Shaw*, which held that a credit bureau's interpretation of FCRA was not objectively unreasonable, and thus not a willful violation, "when [the credit bureau] relied on the guidance of its regulatory agency and at least one district court has subsequently agreed with [the credit bureau's] interpretation of the FCRA." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 761 (9th Cir. 2018). Experian argued that because certain district courts have held that relying on ACDV is reasonable, using ACDV cannot be a willful violation. However, as discussed above, the facts here are distinguishable from the cases Experian cites, particularly because Ahn was a minor when the disputed accounts were opened. Experian has not provided any authority suggesting that following ACDV alone is reasonable where the disputed accounts were opened by a minor. It does not appear that any court has ever held as such. Accordingly, to the extent that Experian's practice (in general or in this case) is to use ACDV alone for disputed minor accounts, Experian cannot claim to be relying on an interpretation of FCRA any court has endorsed. *Shaw* is inapposite. *See id.*

Here, there are genuine disputes of material fact as to how Experian generally conducts reinvestigations and what occurred in the reinvestigation as to Ahn. The parties dispute the details of Experian's Minor Policy, including whether the policy is mandatory and whether the failure to apply the policy to Ahn was a "mistake" or a "reckless disregard[ing] [of] Ahn's rights." Response to SGD ¶¶ 11, 15–16. Determining what the policy is and what occurred when it was not applied are relevant to determining willfulness.

The Ninth Circuit has instructed that reasonableness under FCRA is typically a jury question but has not weighed in directly on whether willfulness is.[10] *See Guimond*, 45 F.3d at 1333. The Court finds that willfulness is as much a question of fact as reasonableness is.

On the factual record before the Court here, willfulness must be decided by the jury. There are genuine disputes of material fact on what Experian's policies are and whether they were followed, and these questions could impact the jury's finding on whether "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *See Safeco*, 551 U.S. at 61. For example, should the jury find that the Minor Policy was mandatory and that an employee acted recklessly in not following it, it might find that Experian was acted willfully. While there may be some cases where willfulness could be resolved as a matter of law, this is not such a case. The jury should decide whether Experian's conduct met the standard for willfulness.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Request for Judicial Notice (ECF No. 91), GRANTS the First Motion to Strike (ECF No. 96), DENIES the Second Motion to Strike (ECF No. 97), OVERRULES all of the Evidentiary Objections (ECF No. 95), and DENIES the Motion for Summary Judgment (ECF No. 87).

IT IS SO ORDERED.


Dated: July 25, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[10] The general consensus among district courts within the Ninth Circuit is that willfulness is typically a jury question. *See, e.g.*, *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1209–11 (C.D. Cal. 2007) (citing *Guimond*, 45 F.3d at 1333, and numerous district court); *Adan v. Insight Investigation, Inc.*, No. 16CV2807-GPC(WVG), 2018 WL 467897, *8 (S.D. Cal. Jan. 18, 2018) (citing numerous district courts). Despite this, some courts have held that summary judgment can be granted as to willfulness in certain circumstances, particularly where there are no facts that might support willfulness. *See Abbink v. Experian Info. Sols., Inc.*, No. SACV191257JFWPJWX, 2019 WL 6838705, *5 (C.D. Cal. Sept. 20, 2019) (citing *Mnatsakanyan v. Goldsmith & Hull APC*, 2013 WL 10155707, at *7 (C.D. Cal. May 14, 2013)). All of these decisions are not binding on this Court.

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28